UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA M. BUCHANON,

                Plaintiff,

                                   CASE NO. 13-CV-14288
v.                              HONORABLE GEORGE CARAM STEEH

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Doc. 14) and DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (Doc. 13)**

Plaintiff Monica M. Buchanon challenges the Commissioner of Social Security's (the "Commissioner") final denial of her claim for disability benefits. Cross motions for summary judgment are pending. For the reasons set forth below, defendant's motion for summary judgment shall be granted and plaintiff's motion for summary judgment shall be denied.

**I. Procedural History**

Plaintiff filed an application for disability insurance benefits on May 7, 2010, alleging that she became disabled on January 2, 2000, due to endometriosis, depression, leg pain, fibromyalgia, lupus, bipolar disorder, ovarian cyst, and kidney disease. (Tr. 198). The Commissioner denied that application on July 28, 2010. (Tr. 77). Plaintiff appeared before Administrative Law Judge ("ALJ") Andrew Sloss with counsel on July 25, 2011. *Id.* In an August 2, 2011 written decision, the ALJ found plaintiff not disabled. (Tr. 74-85). Plaintiff timely requested an Appeals Council Review, and on February 13, 2012, the Appeals

Council issued an order remanding the case to an ALJ for further evaluation of plaintiff's claimed mental impairments.  (Tr. 89-92).  Plaintiff appeared before ALJ Sloss with counsel on July 30, 2012, and in a written decision he again denied her claim for benefits.  (Tr. 13-25).  Plaintiff timely requested an Appeals Council review, and on August 27, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review.  (Tr. 1-3).

## II. Administrative Record

### A.    Plaintiff's Background and Testimony

Plaintiff was born on January 1, 1979 making her 33 years old at the time of the remand hearing (Tr. 15).  Plaintiff has an eleventh grade education and worked in the past as a package/line assembly worker.  *Id.*  She last worked as a mail sorter until 2008.  (Tr. 200).  Plaintiff testified that she cannot work because of her fibromyalgia and bipolar disorder.  (Tr. 17).  She further testified that she has back, knee, and elbow pain, and suffers from depression.  (Tr. 17-18).  She testified that her depression limits her daily activities but she can cook and perform household chores when she has enough energy.  (Tr. 18).  The ALJ determined that plaintiff's testimony as to the severity of her symptoms was not supported by the medical evidence of record.  *Id.*  He also noted that plaintiff had no trouble sitting for the entire hearing.  (Tr. 23).

### B.    Medical Evidence

#### 1. Physical Limitations

The ALJ determined that plaintiff has fibromyalgia, degenerative disc disease, bipolar disorder, and anxiety.  Plaintiff sought emergency treatment for her back and leg

pain on several occasions, but an MRI of her spine performed on November 17, 2009 revealed normal results with no bulge, protrusion, central canal stenosis, or foraminal stenosis at any level.  (Tr. 18, 342).  Pain specialist James Culver, M.D., treated plaintiff with steroid injections for her back pain and by the third injection, she reported a 75% improvement in her pain level.  (Tr. 18, 411).  An EMG and nerve conduction study of the bilateral lower extremities performed on February 18, 2011, revealed an essentially normal study.  (Tr. 18, 499).  An MRI of the spine performed on February 19, 2011, revealed degenerative disc disease.  (Tr. 18, 432).  On June 14, 2011, orthopedist Ajay Srivastava, M.D., examined plaintiff for complaints of leg pain and x-rays indicated no significant arthritis and normal joint space and treated plaintiff with physical therapy and over the counter pain medication.  (Tr. 19, 504).  On April 26, 2012, rheumatologist, Ali Karrar, M.D., examined plaintiff for complaints of back and joint pain and diagnosed plaintiff with osteoarthrosis, fibromyalgia, lumbar disc degeneration, and inflammatory polyarthropathy, and prescribed pain medication.  (Tr. 19, Tr. 511-12).

Plaintiff treated with Seif Saeed, MD., who opined in February, 2010, that plaintiff's pain and symptoms were occasionally severe enough to interfere with her attention and concentration.  (Tr. 21, 366).  He also stated that plaintiff could tolerate work stress, could sit for two-hours at a time for a total of at least six hours in an eight hour work day, could stand for 45 minutes at a time, with unscheduled breaks, and could occasionally lift and carry less than 10 pounds.  (Tr. 21, 366-68).  His March 28, 2011 medical source statement reported that plaintiff's condition was stable and she could meet her needs in the home.  (Tr. 21, 449-50).  His June 28, 2012 assessment concluded that plaintiff's condition had improved and that most of her symptoms responded to medication.  (R. 21, 699-702).  At

-3-

step three, the ALJ determined that plaintiff's physical impairments did not meet or equal the criteria of 1.00 musculoskeletal system or any impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1.  (Tr. 15).

### 2. Mental Limitations

The ALJ determined that although plaintiff suffers from bipolar disorder and anxiety, plaintiff's mental impairments do not meet or equal the criteria of listings 12.04 and 12.06, and thus, plaintiff is not disabled at step three.  (Tr. 15).  Plaintiff has not challenged this finding.

Plaintiff treated with Pamela Griffin, a limited license psychologist for complaints of anxiety and depression.  In 2011, Griffin opined that plaintiff's level of depression was very high and she would not be able to perform any work (Tr. 22, 460), but in 2012, Griffin improved her opinion of plaintiff's mental status and opined that plaintiff's prognosis was good with medications and therapy.  (Tr. 22, 535).  On July 26, 2010, state agency examiner, Blaine Pinaire, Ph.D., conducted a psychiatric review of plaintiff and determined that she had only mild restrictions of daily living activities and social interactions, and mild difficulties in concentration, persistence, or pace.  (Tr. 23, 67-72).  On September 9, 2010, certified nursing assistant Denise Will performed a psychiatric evaluation of plaintiff and concluded that plaintiff's prognosis was "good with treatment."  (Tr. 19, 470-73).  Plaintiff's mental status improved with the use of psychiatric medications until plaintiff stopped taking her medications and was hospitalized. (Tr. 19-20, 688-70).  Once plaintiff resumed taking her medications and her prescriptions were adjusted, and upon completing a substance abuse treatment program, plaintiff reported feeling better emotionally.  (Tr. 20, 526).  On

-4-

May 2, 2012, at her medication review, plaintiff reported that she had no concerns of issues, and notes indicate that her sleep was improved, and she displayed a "euthymic mood" and "fair insight." (Tr. 20, 516). Plaintiff's primary care physician, Joyce Stevens, M.D., treated plaintiff for insomnia, anxiety, chronic back pain, ovarian cysts, and fibromyalgia. She opined that plaintiff's psychological symptoms would limit her ability to sustain concentration and to interact socially. (Tr. 20-21, 399).

## C.    Vocational Expert Testimony

The ALJ held that plaintiff was only able to perform light work subject to several additional limitations. Specifically, in defining her residual functional capacity ("RFC"), he determined that plaintiff could only "occasionally climb, balance, stoop, crouch, kneel, or crawl," was "limited to frequent handling and fingering bilaterally," and that her "psychological symptoms limit her to unskilled work." (Tr. 17). The vocational expert considered her age, education, past work experience, and RFC, and determined that a significant number of jobs existed in the regional economy which plaintiff was capable of performing including packer, inspector, and housekeeper. (Tr. 24).

## III. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in DIB context);

20 C.F.R. § 416.905(a)(same definition used in SSI context).

The Commissioner's regulations provide that disability is to be determined through

the application of a five-step sequential analysis.   In the first four steps, plaintiff was

required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity ("RFC") to perform relevant past work.

See 20 C.F.R. §§ 404.1520(a)-(f); see also Heston v. Comm'r of Soc. Sec., 245 F.3d 528,

534 (6th Cir. 2001). If plaintiff's impairments prevented plaintiff from doing past work, the

Commissioner, at step five, would consider plaintiff's RFC, age, education, and past work

experience to determine if plaintiff could perform other work.   If not, plaintiff would be

deemed disabled. Id. at § 404.1520(g).  "The burden of proof is on the claimant throughout

the first four steps.... If the analysis reaches the fifth step without a finding that the claimant

is not disabled, the burden transfers to the [Commissioner]." Preslar v. Sec'y of HHS, 14

F.3d 1107, 1110 (6th Cir. 1994).

### IV. The ALJ's Findings

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step

one, that plaintiff had not engaged in substantial gainful activity since May 7, 2010, her

application date. (Tr. 15).  At step two, the ALJ found that plaintiff had the following severe

impairments: fibromyalgia, degenerative disc disease, bipolar disorder, and anxiety.  Id.

At step three, the ALJ found no evidence that plaintiff's impairments met or medically equaled one of the listings in the regulations. Between steps three and steps four, the ALJ found that plaintiff had the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb, balance, stoop, crouch, kneel, or crawl. The claimant is limited to frequent handling and fingering bilaterally. The claimant's psychological symptoms limit her to unskilled work as defined by the Regulations.

(Tr. 17). In reaching this RFC, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged physical and mental symptoms were not wholly credible. (Tr. 18).

As to her physical limitations, the ALJ considered, among other things, the examination report of Ajay Srivastava, an orthopedist, who determined that plaintiff's knees had no abnormalities and showed no evidence of significant arthritis. (Tr. 19). The ALJ also considered an MRI of the lumbar spine performed on November 17, 2009 that revealed normal results; (Tr. 18); an EMG and nerve conduction study of her bilateral lower extremities performed on February 18, 2011 which revealed a normal study; (Tr. 18) and the report of James Culver, a pain management specialist, who treated plaintiff with caudal epidural steroid injections for which plaintiff reported a 75% improvement in her pain. (Tr. 18).

As to her mental limitations, the ALJ considered therapy notes dated November 2, 2011, indicating that once plaintiff had completed a substance abuse program and became sober for 30 days, she reported that she did not feel depressed. (Tr. 20). Although plaintiff reported racing thoughts on January 20, 2012, once her medications were adjusted, plaintiff reported that she had no concerns or issues at her medication review on May 2,

2012 and she displayed a "euthymic mood and fair insight." (Tr. 20). In considering her alleged psychiatric limitations, the ALJ discounted the opinion of plaintiff's treating psychologist, Pamela Griffin, whom he noted was not a medically acceptable source, and found that her opinion as to the severity of plaintiff's mental residual functional was inconsistent with the medical evidence of the record as a whole. (Tr. 23). The ALJ also discounted the opinion of plaintiff's treating general practitioner, Joyce Stevens, that plaintiff would have difficulty with sustained concentration as Stevens was not a mental health care provider, offered no reasons for her opinion, and her opinion contradicted the medical evidence of the record as a whole. (Tr. 21). The ALJ attributed some weight to the psychiatric review of the State agency examiner, Blaine Pinaire, who concluded that plaintiff had only mild restrictions of daily living activities, social interaction, and maintaining concentration, persistence, or pace. (Tr. 23). The ALJ considered the psychiatric evaluation of certified nursing assistant Denise Will who examined plaintiff on September 9, 2010, and determined that although plaintiff's mental status would limit her ability to concentrate, her prognosis with treatment was good, and after plaintiff was prescribed with Zyprexa, she reported notable improvement in her mental status. (Tr. 19).

At step four, the ALJ found that plaintiff could not perform any of her past relevant work. (Tr. 24). At step five, the ALJ found that plaintiff was not disabled because she could perform a significant number of jobs in the national and regional economy such as a packer, inspector, or housekeeper. *Id.*

-8-

## V. Law & Analysis

**A.     Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc) (noting that the substantial evidence standard "presupposes ... a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir.1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks and citations omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

**B.      Plaintiff's Claims of Error**

**1.      Meeting or Medically Equaling Listing 1.04A**

Plaintiff argues that the ALJ's step 3 analysis and determination that her impairments do not meet or medically equal Listing 1.04A is not supported by substantial evidence and complains that the ALJ failed to properly analyze the issue.[1]  Plaintiff claims that remand is warranted under *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), where the Sixth Circuit found the ALJ's analysis at step three to be deficient because the

---

[1]Plaintiff does not object to the ALJ's decision that her alleged mental impairments do not meet or medically equal Listing 12.00.

ALJ did not explain why the claimant did not meet or medically equal Listing 1.04A. Listing 1.04 accounts for disorders of the spine, including osteoarthritis, degenerative disc disease, and spinal stenosis, which result in compromise of a nerve root or the spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. While it is true the ALJ did not cite to the evidence distinguishing plaintiff's medical impairments from the 1.04A listing in that specific paragraph of his analysis, he discussed the evidence barring an equivalence finding in other parts of his opinion, which was sufficient. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.). The ALJ's conclusion that plaintiff's back problems did not constitute a disability at step three is supported by the following evidence discussed in his opinion: (1) an MRI of the spine performed on November 17, 2009 which revealed normal results (Tr. 18, 342), (2) an EMG and nerve conduction study of the bilateral lower extremities performed on February 18, 2011 which revealed an essentially normal study (Tr. 18, 499), (3) an MRI of the spine performed on February 19, 2011 which revealed degenerative disc disease but no invasion of the canal or foramen (Tr. 18, 432), and (4) an EMG and nerve conduction study performed on March 17, 2011 which revealed "C5-C6 root irritation without evidence of sustained denervation, most likely consistent with degenerative cervical spine disease." (Tr. 19, 496). Plaintiff contends that the medical findings in points two through four above actually support her claim that she met

-11-

equivalency Listing 1.04A. The ALJ considered this evidence and found it was insufficient to support her claim of a spinal disability under Listing 1.04A. Although plaintiff presented some evidence of back pain and degenerative disc disease, plaintiff did not meet her burden of showing evidence of nerve root compression.

Plaintiff also claims that pain management specialist James Culver also observed that she had limited mobility, tenderness, and pain which she claims supports a conclusion that plaintiff's impairments could reasonably medically equal Listing 1.04A. The ALJ noted that Culver treated her with steroid injections which she reported improved her pain by 50 percent after the second injection and by 75 percent after the second injection. (Tr. 18, 402, 411). Given plaintiff's responsiveness to conservative treatment, the ALJ did not find that Culver's findings supported a finding of disability. (Tr. 23). Plaintiff also relies on the findings of Ali Karrar, a rheumatology specialist, who noted that plaintiff had back pain and decreased range of motion in the spine. The ALJ considered Karrar's examination report but did not find that his report supported the conclusion that her back problems precluded all gainful activity. (Tr. 19). Finally, plaintiff relies upon her medical examinations by neurologist Nael Tarakji who she claims reported symptoms of back pain and weakness, and whose impression included "degenerative lumbar disease versus herniated disc causing nerve root irritation at the level of L5-S1." (Tr. 497). Tarakji's neurological followup visit dated March 17, 2011, however, "MRI study of the cervical spine done before showed no significant disk herniation. MRI study of the LS spine showed degenerative changes with bulging disk without any significant spinal cord compression or neural foraminal narrowing. EEG was within normal limits." (Tr. 495). Her February 18, 2011 electromyographic study and nerve conduction study to evaluate plaintiff's claims of back

pain concluded that "[t]his is essentially normal study."  (Tr. 499).  The ALJ relied on her February 18, 2011 findings that the EMG and nerve conduction study were normal in his decision.  (Tr. 18).

Even if the ALJ's analysis at step three was somehow deficient, the error is harmless and no remand is required as plaintiff has not shown that her impairments meet Listing 1.04A.  It is plaintiff's "burden to prove that [s]he has an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1."  *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004).  Plaintiff must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Daniels v. Comm'r of Soc. Sec.,* 70 F. App'x 868, 874 (6th Cir. 2003) (quoting *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)).  Plaintiff failed to do so here.  Plaintiff claims that the ALJ's decision and record evidence leave open the possibility that plaintiff's impairments equal Listing 1.04A; thus, under *Reynolds*, 424 F. App'x at 416, remand is warranted.  The medical evidence which plaintiff relies upon to support her argument that her back condition amounts to or equals Listing 1.04A (Doc. 13 at 15-16); however, was considered and rejected by the ALJ in his determination.  Plaintiff has not shown that this evidence could reasonably meet or equal Listing 1.04A.

### 2.    Medical Expert Opinion Regarding Equivalency

Plaintiff argues that the ALJ erred by failing to consider an expert medical opinion as to whether plaintiff met the equivalency of Listing 1.04A and should not have relied only the opinion of state reviewing psychologist Pinaire, and Cathy Jones, a single decision maker.  Defendant responds that the ALJ's step three finding was based upon a thorough

-13-

review of examination findings and progress notes as documented by plaintiff's treating physicians.  Even if the ALJ should have considered an expert medical opinion on the issue of equivalence, remand is not warranted because it is plaintiff who bears the burden to prove that she has an impairment(s) listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and for the reasons set forth above, plaintiff has failed to satisfy that burden here.  *Lusk*, 106 F. App'x at 411.

### 3.    Opinions of Treating Physicians

Plaintiff claims that the ALJ failed to afford proper consideration of the opinions of her treating medical care providers: namely her therapist Pamela Griffin, a limited license psychologist, and Seif Saeed, her treating physician.  The ALJ noted that Griffin was not an acceptable medical source under the regulations, 20 C.F.R. § 416.913(a), but nevertheless considered her treatment notes, evaluation, and prognosis. (Tr. 22-23).  He found that the Griffin's evaluation as to the severity of her psychological limitations was not consistent with the symptoms noted, especially in light of Griffin's notes that plaintiff's symptoms were related to her alcohol use but she had been sober for eight months, (Tr. 23, 538) and opinion that plaintiff had a good prognosis with medications and therapy. (Tr. 22, 535).  The ALJ also considered the testimony of certified nursing assistant Denise Will who opined that plaintiff's prognosis was "good with treatment."  (Tr. 19, 470-73).  The record reflected that plaintiff's psychological symptoms worsened when she stopped taking her medications, (Tr. 688-70), but once she resumed taking her medications and they were adjusted, and she completed a substance abuse program, plaintiff reported that she no longer felt depressed and that she had no concerns or issues.  (Tr. 20, 516).

-14-

The ALJ also considered the notes and opinions of Dr. Saeed but assigned little weight to his ultimate conclusion as to the severity of her physical limitations as it was not well supported by his own examination findings or by the record as a whole.  (Tr. 21-22). Dr. Saeed noted that most of plaintiff's symptoms responded to medication (Tr. 21, 699), that his 2012 assessment showed that plaintiff's condition improved since his 2011 assessment, that her condition was stable, and that she could meet her needs in her home. (Tr. 21, 449-50).  In addition, 2009 and 2010 progress notes from his practice revealed no musculoskeletal or neurological deficits (Tr. 276, 278, 282, 284, 294, 376, 379), and plaintiff had normal range of motion studies, normal muscle strength, and normal sensory findings. (Tr. 280, 294, 373, 378).  In sum, substantial evidence from the record supports the ALJ's conclusions that Griffin and Dr. Saeed's opinions overstated plaintiff's psychological and physical limitations.

### 4.    RFC assessment

Finally, plaintiff complains that the ALJ's RFC determination and hypothetical questions to the vocational expert did not properly account for plaintiff's limitations as to concentration, persistence, or pace, and thus remand is warranted.  In fact, the ALJ properly considered the issue and determined that plaintiff had only moderate limitations with concentration, persistence, and pace (Tr. 16), rejected the opinion that such symptoms would significantly limit her ability for sustained concentration, (Tr. 21), and determined that her psychological symptoms could be accommodated by limiting her to "light" "unskilled" work.  (Tr.17).  The record is clear that the ALJ considered plaintiff's allegations as to the degree of her difficulties with concentration, persistence, and pace, and rejected her

testimony as to the severity of those symptoms to the extent that it was inconsistent with his conclusion that she could still perform "light" "unskilled" work. (Tr. 18). He also partially rejected the opinion of state examiner Pinaire, finding that her conclusion that plaintiff had only "mild" difficulties with concentration, persistence, and pace, and found that instead her difficulties were "moderate." (Tr. 23).

The law is well settled that "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Courts have come to opposite conclusions as to whether a simple description that a claimant can perform "unskilled" work is sufficient to accurately portray a claimant's limitations in concentration, persistence, and pace." *See Taylor v. Comm'r of Soc. Sec.*, No. 10-CV-12519, 2011 WL 2682682, *6 (E.D. Mich. May 17, 2011) (collecting cases). As the court explained in *Taylor*, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration." *Id.* at *7. Rather, the court must examine the record as a whole to determine if substantial evidence supports the ALJ's decision. *Id.* In similar circumstances, courts have found that the hypothetical question to the vocational expert accurately accounted for plaintiff's problems with concentration, persistence, and pace, when the ALJ limited the plaintiff's RFC to an ability to carry out "unskilled" work. *See Latarte v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately

described Plaintiff's moderate limitations caused by her depressive disorder.  There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace.  Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment.").

Here, plaintiff has failed to show that the ALJ's RFC description and hypothetical question to the vocational expert did not accurately portray her limitations as to concentration, persistence, and pace.  The ALJ found that "[t]he medical records and the testimony of the claimant describing her limitations demonstrate that such limitations will not interfere with her ability to function independently, appropriately, effectively and on a sustained basis."  (Tr. 23).  The record reflects that plaintiff's psychological symptoms responded well to medication, (Tr. 19-20, 22, 470-73, 535), that plaintiff's symptoms abated upon her completion of a substance abuse treatment program (Tr. 20, 526), and that despite her symptoms, plaintiff was able to meet her needs in the home  (Tr. 21, 448-452), and had only mild restrictions in the activities of daily living.  (Tr. 23, 67-72).  Under these circumstances, the ALJ's determination that her moderate concentration difficulties could be accommodated by limiting her to 'light' "unskilled work"  such as that of a packer, inspector, or housekeeper is supported by substantial evidence.

## VI. Conclusion

For the reasons stated above, substantial evidence supports the ALJ's decision; thus, defendant's motion for summary judgment (Doc. 14)  is GRANTED, and plaintiff's

motion for summary judgment (Doc. 13) is DENIED.

IT IS SO ORDERED.

Dated:  March 4, 2015

s/George Caram Steeh                              
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 4, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

-18-